# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WESTGATE RESORTS, LTD., WESTGATE VACATION VILLAS, LLC, WESTGATE LAKES, LLC, WESTGATE GV AT THE WOODS, LLC, WESTGATE TOWERS, LLC, WESTGATE FLAMINGO BAY, LLC, WESTGATE MYRTLE BEACH, LLC, WESTGATE PALACE, LLC, WESTGATE GV AT EMERALD POINTE, LLC, WESTGATE GV AT PAINTED MOUNTAIN, LLC, WESTGATE LAS VEGAS RESORT, LLC, WESTGATE BLUE TREE ORLANDO, LTD., WESTGATE DAYTONA, LLC, WESTGATE RVS ORLANDO, LLC, WESTGATE SOUTH BEACH, LLC and WESTGATE GV AT TUNICA, LLC,,**

                **Plaintiffs,**

v.                                             Case No:   6:19-cv-1982-Orl-40GJK

**WESLEY FINANCIAL GROUP, LLC,**

                **Defendant.**

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANT'S TIME-SENSITIVE MOTION FOR PROTECTIVE ORDER AS TO PLAINTIFFS' SUBPOENA DUCES TECUM TO BETTER BUSINESS BUREAU, INC. (Doc. No. 43)** |
| **FILED:** | **May 6, 2020** |

> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

## I.     BACKGROUND.

On October 17, 2019, Plaintiffs, a collection of timeshare entities, filed a complaint against Defendant, a timeshare exit company, for False Advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), and Violation of Florida's Deceptive and Unfair Trade Practices, Fla. Stat. § 501.201, *et seq.* (Count II) (the "Complaint"). Doc. No. 1. The Complaint contains a litany of Defendant's alleged bad acts, including that it disrupts timeshare contracts for a fee; makes false promises of a "100% guarantee;" falsely claims it can procure a "legal" cancellation of the timeshare interest, when knowing that it cannot; instructing its clients not to disclose their relationship to the timeshare companies; directing its clients to breach timeshare contracts and thereby subjecting its clients to foreclosure and other adverse legal actions; falsely claiming that if hired, their clients will not have to pay on their timeshares again; impersonating their clients in contacting Plaintiffs; and charging exorbitant fees. *Id.* at ¶¶ 3, 4, 6, 38, 45, 48, 49, 63. Plaintiffs assert that their allegations are "not intended to be exhaustive and additional false and misleading statements which [Plaintiffs] will include in this claim and for which [Plaintiffs] will seek relief herein are expected to be identified by continuing investigation and through discovery." *Id.* at ¶¶ 63, 79. Plaintiffs allege that Defendant "indiscriminately targets all timeshare owners . . . ." *Id.* at ¶ 5. Plaintiffs seek temporary and permanent injunctive relief, and attorney's fees and costs. *Id.* at 18, 23.

On May 6, 2020, Defendant filed a Time-Sensitive Motion for Protective Order as to Plaintiffs' Subpoena Duces Tecum to Better Business Bureau, Inc. (the "Motion"). Doc. No. 43. The subpoena directs compliance by June 2, 2020. Doc. No. 43-3 at 2. On May 20, 2020, Plaintiffs filed their response to the Motion. Doc. No. 51.

**II.     ANALYSIS.**

On May 6, 2020, after conferring with Defendant regarding its requests, Plaintiffs had a subpoena issued to the Better Business Bureau ("BBB") requesting that the BBB provide it with several categories of documents from October 17, 2015, through the present, on or before June 2, 2020. Doc. No. 43-3. Defendant asks for a protective order limiting the requests and providing a fourteen-day "waiting period" to provide Defendant time to designate the materials that BBB produces as confidential or attorney's eyes only, if applicable, pursuant to the parties' Confidentiality Agreement. Doc. No. 43.

**A.     Law**

Federal Rule of Civil Procedure 26(b)(1) provides the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Under Rule 26(c)(1), a party moving for a protective order must show that good cause exists for the court to issue such an order "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In addition to finding good cause, the court must also be satisfied that, on balance, the interests of the party seeking the protective order outweigh the interests of the opposing party. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989). The moving party bears the burden of establishing entitlement to a protective order. *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011).[1] Although the bases

---

[1] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

for granting a protective order are narrow, the Court may, on its own, limit the extent of discovery "if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

### B.  Documents Regarding Consumers

Plaintiffs requested the following documents from the BBB:

> 1. Customer complaints regarding:
>    a. [Defendant]'s advertising
>    b. The cost of and fees for [Defendant]'s services
>    c. [Defendant]'s timeshare cancellation process
>    d. [Defendant]'s claim that it can get a timeshare owner out of his/her contract
>    e. [Defendant]'s guaranteed timeshare cancellation
>    f. [Defendant]'s 100% money back guarantee
>    g. [Defendant]'s business methods and practices
>    h. Promises that [Defendant] did not keep and/or services that [Defendant] did not provide
>    i. [Defendant]'s failure to meet the expectations of the customer.
> 2. Correspondence with Defendant regarding customer complaints identified in response to request 1.
> 3. Responses exchanged by Defendant and customers regarding customer complaints identified in response to request 1.
> 4. Customer reviews regarding Defendant.

Doc. No. 43-3 at 9.

Defendant argues that these requests are too broad and should be limited to Plaintiffs' owners and the alleged acts that form the basis of the Complaint. Doc. No. 43 at 10-12. Defendant proposes that Request 1 be limited as follows:

> Customer complaints by [Plaintiffs'] timeshare owners regarding:
>
> a. [Defendant]'s advertising;
> b. [Defendant]'s claim that it can get a timeshare owner out of his/her contract;
> c. [Defendant]'s 100% money back guarantee of timeshare cancellation;
> d. [Defendant]'s failure to provide the timeshare cancellation services it claimed it would provide;

   e. [Defendant] instructing customers to cease payment to Westgate;
   f. The failure to disclose [Defendant]'s involvement in assisting customers; or
   g. [Defendant] impersonating customers.

*Id.* at 10-11. Defendant asks that Request 4 be modified to ask for customer reviews by Plaintiffs' timeshare owners regarding subjects a through g above. *Id.* at 12. Thus, Defendants seek to eliminate the requests for documents regarding its costs and fees, its business methods and practices, and its failure to meet the expectations of the customer. *Id.* at 10-12; Doc. No. 43-3 at 9; Doc. No. 51 at 14.

  As Plaintiffs specifically allege that Defendant charges "outrageous fees" that it does nothing to earn, Doc. No. 1 at ¶ 6, customer complaints and consumer reviews regarding Defendant's costs and fees are relevant and proportional.

  The phrases "business methods and practices," and "failure to meet the expectations of the customer" are too broad to be relevant and proportional to the needs of this case. Plaintiffs argue that their requests should not be limited to the acts alleged in the Complaint because Defendant allegedly "shrouds its business practices in secrecy . . . ." Doc. No. 51 at 11. Plaintiffs also contend that the Complaint encompasses such discovery because they allege that the acts listed therein are not exhaustive and that they expected to uncover more through discovery. *Id.* at 9; Doc. No. 1 at ¶¶ 63, 79. These arguments are unavailing. Few customer complaints and reviews, if any, would be excluded from those regarding "business methods and practices," and "failure to meet the expectations of the customer." These phrases call for discovery that exceeds the scope of Rule 26(b)(1). Although Plaintiffs argue that any irrelevant complaint could not be prejudicial to Defendant, Doc. No. 51 at 11, the Court may issue a protective order to limit the discovery to the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii).

In response to Defendant's argument that the requests should be limited to Plaintiffs' timeshare owners, Plaintiffs respond that Defendant's "bad acts are the same for every customer regardless of timeshare developer." Doc. No. 51 at 12. Plaintiffs assert that evidence regarding other timeshare clients is relevant because Defendant treats all timeshare client the same, regardless of who their timeshares are with. *Id.* at 4. Plaintiffs state, "Defendant's business model does not make Westgate any more or less relevant than Wyndham, Bluegreen or Diamond Resorts™. It treats them all the same." *Id.*

Rule 26(b)(1) limits discovery to that which is "relevant to any party's claim or defense and proportional to the needs of the case . . . ." As Plaintiffs admit that Defendant's behavior is the same regardless of which timeshare entity is involved, discovery of the BBB's documents regarding timeshare owners other than those of Plaintiffs' is not proportional to the needs of this case, which was brought by Plaintiffs, and not by all timeshare entities that have owners that engaged Defendant. Thus, documents that do not involve Plaintiffs' timeshare owners are outside the scope permitted by Rule 26(b)(1).

Plaintiffs argue that "Defendant concedes that the BBB cannot actually tailor its production" to records of Plaintiffs' timeshare owners. Doc. No. 51 at 11. Plaintiffs did not provide a citation for this alleged concession, but Defendant did offer a solution for the issue if it arises—that the parties' counsel can review a customer list and advis[e] the BBB whether an individual is one of Plaintiffs' timeshare owners. Doc. No. 43 at 10 n.5. Assuming the BBB is incapable or unwilling to limit its production to responsive documents that relate to Plaintiffs' timeshare owners, Defendant's proposal seems reasonable and should be sufficient to identify such documents.

### C. Documents Regarding BBB Membership, Accreditation and Revocation of Accreditation

Plaintiffs ask the BBB to produce the following:

> 5. Documents related to the revocation of Defendant's accreditation in BBB on November 20, 2019.
> 6. Documents related to BBB's accreditation of Defendant prior to November 20, 2019.
> 7. Documents submitted by Defendant in connection with its application for BBB membership.
> 8. Documents submitted by Defendant in connection with its application for BBB accreditation.
> 9. Documents related to BBB's revocation of Defendant's accreditation in BBB at any time prior to November 20, 2019.

Doc. No. 43-3 at 9-10. Defendant argues that these requests are irrelevant because whether "a consumer protection organization has, or has not, chosen to accredit [Defendant] does not have independent significance to Plaintiffs' claims." Doc. No. 43 at 12. Defendant also contends that "related to" is defined so broadly that the request "covers both documents that the BBB relied upon for the revocation -- even if they involve complaints from non-[Plaintiffs'] customers or complaints from [Plaintiffs'] customers about activities not involved in this case – *and* documents that 'were not relied or acted upon' at all in making the decision. *Id.* at 13 (quoting subpoena; emphasis in original). Defendant states that using BBB accreditation in its advertising does not make it relevant. *Id.* at 12-15. Finally, Defendant argues that "any potentially relevant information regarding complaints by [Plaintiffs'] customers involving the alleged activities that form the basis for Plaintiffs['] claims will be encompassed by the other requests in the Subpoena . . . ." *Id.* at 14.

Plaintiffs argue that the requests are relevant because all Defendant's advertising is false and misleading. Doc. No. 51 at 16. They contend that the following five of the BBB's standards in its accreditation criteria are relevant to their allegations: advertise honestly; tell the truth; be transparent; honor promises; and be responsive. *Id.* (citing Standards, https://www.bbb.org/bbbaccreditation-standards (last viewed on May 13, 2020)). Plaintiffs state

that "related to" is not overly broad because "it modifies a sufficiently specific event . . . ." *Id.* Plaintiffs argue that the application materials are relevant to the false advertising claims to the extent that the application was false or misleading. *Id.* at 17. Regarding documents relating to Defendant applying for and being a member of the BBB, Plaintiffs state that Defendant does not "include any specific information regarding what is contained in those materials that might merit protection from discovery." *Id.* Finally, if "Defendant continued to advertise that it was accredited [after the accreditation was revoked, then] that would constitute false advertising." *Id.* at 18.

Plaintiffs allege that Defendant falsely promised a 100% guarantee and impersonated its clients in dealing with Plaintiffs, among other things. Doc. 1 at ¶¶ 3, 4, 6, 38, 45, 48, 49, 63. These allegations are relevant to the BBB's standards of advertising honestly, telling the truth, being transparent, and honoring promises. Thus, Plaintiffs demonstrate that the documents requested regarding Defendant's application, membership, and revocation of accreditation with the BBB are within the scope of Rule 26(b)(1).

### D.     Fourteen-Day Waiting Period

Defendant's last request from the Court is that it:

> [D]irect that (a) the parties shall have 14 days to designate documents and electronically stored information produced by the BBB as "confidential" or "attorneys' eyes only" in accordance with the Confidentiality Agreement, and (b) during the 14-day period, the parties shall treat the documents and electronically stored information produced by the BBB as "attorneys' eyes only."

Doc. No. 43 at 17. Defendant admits that the Confidentiality Agreement does not provide for this, but argues that under it "and Rule 26(c), this Court has the authority to restrict the use or disclosure of the information produced by the BBB." *Id.* at 16. Defendant contends that the waiting period is necessary so that Plaintiffs do not "thwart the agreed ability for [Defendant] to designate documents produced by third parties simply because there will be a time gap between the

- 9 -

production and the designation – during which Plaintiffs apparently wish to be able to freely disseminate the information produced by the BBB." *Id.*

Plaintiffs argue that the documents from the BBB are in the public domain and the BBB does not claim that they are confidential. Doc. No. 51 at 18. Plaintiffs describe this as an "overreaching blanket request" that does not comply with the Court's Standing Order Regarding Confidential Information. *Id.* at 18-19. They assert that Defendant is trying to prevent them from identifying adverse witnesses. *Id.* at 19.

The Court and the parties are well aware that Defendant does not want Plaintiffs to know who its customers are. Doc. No. 49. Whether Defendant can prevent Plaintiffs from obtaining that information is to be determined another day. While that determination is pending, Defendant's proposed waiting period, which does not exclude Plaintiffs' counsel from reviewing the documents, is appropriate. It is unclear how this would prevent Plaintiffs from identifying adverse witnesses when Plaintiffs' counsel will be reviewing the documents. The discovery deadline is September 18, 2020, Doc. No. 22 at 1, and Plaintiffs provide no argument that they will be prevented from adequately litigating their case by such a precautionary measure. At this time, Defendant's interests outweigh Plaintiffs' interests, and under Rule 26(c), this is an appropriate precaution to take.

### III. CONCLUSION.

Accordingly, it is **ORDERED** that the Motion (Doc. No. 43) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Request 1 in the subpoena issued to the BBB is modified as follows:

    Customer complaints by Plaintiffs' timeshare owners regarding:

    a. Defendant's advertising;

    b. The cost of and fees for Defendant's services;

    c. Defendant's claim that it can get a timeshare owner out of his/her contract;

    d. Defendant's 100% money back guarantee of timeshare cancellation;

    e. Defendant's failure to provide the timeshare cancellation services it claimed it would provide;

    f. Defendant instructing customers to cease payment to Westgate;

    g. The failure to disclose Defendant's involvement in assisting customers; or

    h. Defendant impersonating customers.

2. Request number four is modified as follows:

   Customer reviews by Plaintiffs' timeshare owners regarding:

       a. Defendant's advertising;

       b. The cost of and fees for Defendant's services;

       c. Defendant's claim that it can get a timeshare owner out of his/her contract;

       d. Defendant's 100% money back guarantee of timeshare cancellation;

       e. Defendant's failure to provide the timeshare cancellation services it claimed it would provide;

       f. Defendant instructing customers to cease payment to Westgate;

       g. The failure to disclose Defendant's involvement in assisting customers; or

       h. Defendant impersonating customers.

3. The parties shall have fourteen days from receipt of the documents from the BBB to designate documents and electronically stored information produced by the BBB as "confidential" or "attorneys' eyes only" in accordance with the Confidentiality Agreement;

- 11 -

4. During the fourteen-day period, the parties shall treat the documents and electronically stored information produced by the BBB as "attorneys' eyes only;" and

5. In all other respects, the Motion is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on May 22, 2020.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties